IN THE DISTRICT COURT OF THE UNITED STATES

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| VICTOR D. CULBRETH, ) | Civil Action No. 3:05-658-GRA-JRM |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| COMMISSIONER OF SOCIAL SECURITY, ) | **REPORT AND RECOMMENDATION** |
| ) | |
| Defendant. ) | |
| ) | |

This case is before the Court pursuant to Local Rule 83.VII.02, et seq., D.S.C., concerning the disposition of Social Security cases in this District. Plaintiff brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Supplemental Security Income ("SSI").

**ADMINISTRATIVE PROCEEDINGS**

On April 30, 2002, Plaintiff applied for SSI.[1] Plaintiff's application was denied initially and on reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). After a hearing held June 15, 2004, at which Plaintiff appeared and testified, the ALJ issued a decision dated December 1, 2004, denying benefits. The ALJ found that Plaintiff was not disabled because under the medical-vocational guidelines (also known as the "Grids") promulgated by the

---

[1] Plaintiff filed a previous application for Disability Insurance Benefits ("DIB") on January 20, 2000, which was denied by the State agency and the Social Security Administration initially and upon reconsideration, and in a decision (after a hearing) dated April 9, 2002 by an Administrative Law Judge. The Appeals Council denied review on June 12, 2002. Plaintiff did not further pursue his administrative remedies. As a general rule, the Federal Courts do not have jurisdiction to review a decision by the Commissioner to reopen a prior application. Califano v. Sanders, 430 U.S. 99, 107-108 (1977).

Commissioner, Plaintiff remains able to perform work found in the national economy. See generally 20 C.F.R., Part 404, Subpart P, Appendix 2.

Plaintiff was thirty-seven years old at the time of the ALJ's decision. He has a twelfth-grade education and past relevant work as a dishwasher, a school bus driver, a truck driver, and a heavy equipment operator. Plaintiff alleges disability since April 10, 2002, due to sarcoidosis,[2] breathing problems, knee pain, and kidney problems.

The ALJ found (Tr. 20-21):

1. THE CLAIMANT HAS NOT ENGAGED IN SUBSTANTIAL GAINFUL ACTIVITY SINCE THE ALLEGED ONSET OF DISABILITY.

2. THE CLAIMANT'S SARCOIDOSIS AND OSTEOARTHRITIS ARE "SEVERE" IMPAIRMENTS BASED UPON THE REQUIREMENTS IN THE REGULATIONS (20 CFR § 416.920).

3. TH[ESE] MEDICALLY DETERMINABLE IMPAIRMENTS DO NOT MEET OR MEDICALLY EQUAL ONE OF THE LISTED IMPAIRMENTS IN APPENDIX 1, SUBPART P, REGULATION NO. 4.

4. THE UNDERSIGNED FINDS THE CLAIMANT'S ALLEGATIONS REGARDING HIS LIMITATIONS ARE NOT TOTALLY CREDIBLE FOR THE REASONS SET FORTH IN THE BODY OF THE DECISION.

---

[2]Sarcoidosis is:
a chronic, progressive, systemic granulomatous reticulosis of unknown etiology, characterized by hard tubercles (q.v.) in almost any organ or tissue, including the skin, lungs, lymph nodes, liver, spleen, eyes, and small bones of the hand and feet. Laboratory findings may include hypercalcemia and hypergammaglobulinemia; there is usually low or absent reactivity to tuberculin, and in active cases, a positive Kveim reaction. The acute form has an abrupt onset and a high spontaneous remission rate, whereas the chronic form, insidious in onset, is progressive.
Dorland's Illustrated Medical Dictionary 1656 (30th ed. 2003).

> 5. THE CLAIMANT RETAINS THE RESIDUAL FUNCTIONAL CAPACITY TO PERFORM A WIDE RANGE OF LIGHT WORK.
>
> 6. THE CLAIMANT IS UNABLE TO PERFORM ANY OF HIS PAST RELEVANT WORK (20 CFR § 416.965).
>
> 7. THE CLAIMANT IS A "YOUNGER INDIVIDUAL BETWEEN THE AGES OF 18 AND 44" (20 CFR § 416.963).
>
> 8. THE CLAIMANT HAS A "HIGH SCHOOL (OR HIGH SCHOOL EQUIVALENT) EDUCATION" (20 CFR § 416.964).
>
> 9. THE CLAIMANT HAS NO TRANSFERABLE SKILLS FROM ANY PAST RELEVANT WORK AND/OR TRANSFERABILITY OF SKILLS IS NOT AN ISSUE IN THIS CASE (20 CFR § 416.968).
>
> 10. BASED ON AN EXERTIONAL CAPACITY FOR LIGHT WORK, AND THE CLAIMANT'S AGE, EDUCATION, AND WORK EXPERIENCE, A FINDING OF "NOT DISABLED" IS DIRECTED BY MEDICAL-VOCATIONAL RULES 201.27 AND 202.20.
>
> 11. THE CLAIMANT WAS NOT UNDER A "DISABILITY" AS DEFINED IN THE SOCIAL SECURITY ACT, AT ANY TIME THROUGH THE DATE OF THE DECISION (20 CFR § 416.920(G)).

On February 11, 2005, the Appeals Council denied Plaintiff's request for review, making the decision of the ALJ the final action of the Commissioner. Plaintiff filed this action on March 1, 2005.

The only issues before this Court are whether correct legal principles were applied and whether the Commissioner's findings of fact are supported by substantial evidence. <u>Richardson v. Perales</u>, 402 U.S. 389 (1971) and <u>Blalock v. Richardson</u>, 483 F.2d 773 (4th Cir. 1972). Under 42 U.S.C. §§ 423(d)(1)(A) and 423(d)(5) pursuant to the Regulations formulated by the Commissioner, Plaintiff has the burden of proving disability, which is defined as an "inability to

engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months…." See 20 C.F.R. § 404.1505(a) and Blalock v. Richardson, supra.

## DISCUSSION

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence and that the ALJ erred in not finding that he met one of the listing of impairments ("Listings"), 20 C.F.R. Part 404, Subpart P, Appendix 1.

    A.    Substantial Evidence

Plaintiff appears to allege that the ALJ's decision is not supported by substantial evidence. The Commissioner contends that the ALJ's decision that Plaintiff was not disabled is supported by substantial evidence.

Substantial evidence is:

> evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance. If there is evidence to justify a refusal to direct a verdict were the case before a jury, then there is "substantial evidence".

Shively v. Heckler, 739 F.2d 987, 989 (4th Cir. 1984); Laws v. Celebreeze, 368 F.2d 640, 642 (4th Cir. 1966). It must do more, however, than merely create a suspicion that the fact to be established exists. Cornett v. Califano, 590 F.2d 91, 93 (4th Cir. 1978).

The ALJ's decision is supported by substantial evidence, including the findings of Plaintiff's treating and examining physicians, as well as other evidence in the record. Plaintiff was treated at the Internal Medicine Clinic ("IMC") in Columbia, South Carolina from December 6, 2001 to

March 27, 2004. Tr. 185-225, 242.[3] He was hospitalized at Palmetto Richland Memorial Hospital from December 7 to 10, 2001 for hypercalcemia and acute renal failure. Tr. 123-147. Upon discharge, however, his calcium levels had decreased. By his January 28, 2002 IMC appointment, it was noted that Plaintiff was doing well with no sarcoid complaints. Tr. 215. On April 8, 2002, just two days before Plaintiff's alleged onset date, Plaintiff was treated for seasonal allergies. He denied any difficulties with his sarcoidosis, and it was noted that he had normal range of motion and strength of his extremities. Tr. 212-213.

Plaintiff did not return to the IMC again until August 6, 2002, when he complained of left knee pain that was worse when climbing hill or stairs. He also complained of hand cramps from typing, that resolved with rest. He had no intercostal retractions or use of accessory muscles during respiration and had no rales, rhonchi, or wheezes. Plaintiff's range of motion and strength of extremities were normal and it was noted that he could undergo exercise testing and/or participate in an exercise program. Medications for sarcoidosis and asthma were prescribed. Tr. 209-210. On December 1, 2002, Plaintiff complained of knee pain. He was referred to an orthopedist and Ultram and Capsaicin cream were prescribed for his pain. Plaintiff reported doing well from a sarcoid standpoint. An x-ray of his knee was normal. Tr. 204-206. On November 5, 2002, Plaintiff reported that his knee pain was well controlled by medication and his breathing was good. Tr. 201-202. Plaintiff reported a sarcoid flare on December 30, 2002, for which Prednisone was prescribed. He did not return to the IMC until February 11, 2003, at which time

---

[3]This includes records prior to Plaintiff's SSI application date and his alleged onset date. The proper inquiry in an application for SSI benefits is whether claimant was disabled on or after his/her application date. See 20 C.F.R. § 416.335.

his breathing was reportedly good. Although Plaintiff complained of knee pain, he had not attended his scheduled initial appointment with an orthopaedist. Tr. 196-197. At his appointment at the IMC on May 27, 2003, Plaintiff's asthma was noted to be fairly well controlled. He had been to the orthopaedist who suggested surgical intervention for his knee condition. Tr. 191-192.

Plaintiff was hospitalized between January 23 and 25, 2004 for a left high tibial osteotomy with insertion of orthopedic hardware. Tr. 237, 254-255. Post operative x-rays revealed good alignment. Tr. 247. Follow-up orthopedic examination on February 3, 2004, revealed a left knee flexion constriction. Plaintiff had clear lungs, normal cardiac rate and rhythm, and good left knee valgus (bend outward). Tr. 320. On February 5, 2004, Plaintiff underwent an outpatient operative procedure (manipulation and adjustment of the external fixator of his left knee). Tr. 328-329.[4]

The ALJ's decision is also supported by the medical records of Dr. Mitchell H. Hegquist, a general surgeon who examined Plaintiff on September 11, 2002. Tr. 148-151. Plaintiff complained of finger pain and bilateral knee and ankle pain on extremes of ranges of motion. Examination revealed left knee joint moderate lateral instability with a varus (bent inward) deformity, limited ranges of motion in his left knee, and right knee mild lateral instability with varus deformity. Tr. 150. There was, however, an absence of finger joint tenderness to palpation; absence of knee or ankle joint edema or crepitance; normal left knee strength; full right knee ranges of motion and strength; the absence of other extremity edema, tenderness, swelling, deformity, or instability; the absence of muscle spasm or atrophy; normal grip strength; normal gait; normal deep

---

[4]On June 16, 2004, an unknown physician (there are no treatment notes from this physician), wrote that Plaintiff could not return to work because he might require further surgery. Tr. 110A. Speculation that a disease may become worse is not sufficient to establish disability. See Gallus v. Callahan, 117 F.3d 1061, 1063 (8th Cir. 1997).

tendon reflexes; full neck ranges of motion; clear lungs with the exception of mild widespread rhonchi that cleared with coughing; the absence of spontaneous cough or shortness of breath; and normal cardiac rhythm without abnormal sounds or evidence of enlargement or failure.[5]  Tr. 149-150.  Plaintiff was able to heel/toe walk, squat, and perform fine and gross manipulations with his hands.  Tr. 150.  Spirometry revealed a moderate obstructive ventilatory deficit and a possible restrictive component, and the absence of pulmonary fibrotic process or destructive disease.  Tr. 153, 155.  It was noted that the validity of the testing was difficult to determine due to Plaintiff's variability.  Tr. 155.  Dr. Hegquist diagnosed a history of bilateral renal stones, status post lithotripsy; asthma; and sarcoidosis.  Tr. 150.

Plaintiff was hospitalized between April 20 and 22, 2003, after sustaining injuries as a driver in a motor vehicle accident in which he was noted to have consumed alcohol.  Tr. 160-163.  Examination revealed normal breathing with bilateral breath sounds and only a few wheezes, normal cardiac sounds, intact extremity motor functioning without deformity, the absence of neck tenderness or deformity, and the absence of back tenderness or deformity.  A chest x-ray revealed an enlarged cardiac silhouette, increased pulmonary vascularity, and evidence possibly representing a right contusion or atelectasis.  A chest CT scan revealed a questionable, possible very minimal retrosternal hematoma.  A head CT revealed a stable, nondisplaced skull fracture.  Plaintiff was diagnosed with a pulmonary contusion, a retrosternal hematoma, and a skull fracture.  It was noted

---

[5]Although Plaintiff alleges sarcoidosis-related visual symptoms or disorders, his corrected visual acuity was 20/40 bilaterally.  Tr. 149.  He had surgery for a cataract, but he submitted no medical evidence supporting his claims of any continuing disabling light sensitivity.

that he ambulated easily without assistance and was in "great" physical shape. Tr. 160-184, 364-366.

On August 8, 2003, Dr. Robert Kukla, a State agency physician, determined that Plaintiff retained the RFC to perform light work with restrictions of climbing ramps and stairs, balancing, and stooping only occasionally; not performing work requiring concentrated exposure to fumes, odors, dusts, gases, or poor ventilation; and not kneeling, crouching, crawling, operating floor pedals, climbing ladders, climbing ropes, or climbing scaffolds. Tr. 229-332. The ALJ's decision to disregard those limitations that reduced Plaintiff's ability to perform the full range of light work is supported by substantial evidence in the medical record. Further, Dr. Kukla's RFC did not include consideration of additional evidence that was submitted after the opinion was rendered.

The ALJ's decision to discount Plaintiff's credibility[6] is supported by substantial evidence, including the medical evidence as discussed above. The ALJ's decision is also supported by Plaintiff's activities of daily living. In a statement dated July 10, 2002, Plaintiff reported he lived alone, generally cared for his own personal needs, performed limited household cleaning and other chores, watched television, shopped with assistance in transportation, and attended church services. Tr. 95-97. At the hearing, Plaintiff testified that he performed limited household cleaning and

---

[6]In assessing credibility and complaints of pain, the ALJ must (1) determine whether there is objective evidence of an impairment which could reasonably be expected to produce the pain alleged by a plaintiff and, if such evidence exists, (2) consider a plaintiff's subjective complaints of pain, along with all of the evidence in the record. See Craig v. Chater, 76 F.3d 585, 591-92 (4th Cir. 1996); Mickles v. Shalala, 29 F.3d 918 (4th Cir. 1994). Although a claimant's allegations about pain may not be discredited solely because they are not substantiated by objective evidence of the pain itself or its severity, they need not be accepted to the extent they are inconsistent with the available evidence, including objective evidence of the underlying impairment, and the extent to which the impairment can reasonably be expected to cause the pain the claimant alleges he suffers. A claimant's symptoms, including pain, are considered to diminish his or her capacity to work to the extent that alleged functional limitations are reasonably consistent with objective medical and other evidence. 20 C.F.R. §§ 404.1529(c)(4) and 416.929(c)(4).

8

other chores, read, watched television, attended church services, and was able to drive an automobile in the dark or when it was not too sunny. Tr. 377, 384, 386. On a number of occasions, Plaintiff reportedly was only taking nonprescription medication for pain. Tr. 79, 95, 148. See, e.g., Shively v. Heckler, 739 F.2d 987, 990 (4th Cir. 1984) (ALJ properly considered claimant's lack of use of strong pain medication); see also 20 C.F.R. § 404.1529(c)(3)(listing "other evidence" to be considered when "determining the extent to which [claimant's] symptoms limit [claimant's] capacity for work," including, "(iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms[.]"). Plaintiff's credibility was also undermined by his failure to attend appointments at a sarcoid clinic to which he had been referred and his noncompliance at times with his medical regimen. Tr. 196-197, 199, 202, 206, 210. See English v. Shalala, 10 F.3d 1080, 1083-1084 (4th Cir. 1993); see also Hunter v. Sullivan, 993 F.2d 31, 36 (4th Cir. 1993); 20 C.F.R. § 404.1530(a) and (b).

    B.    Listings

Plaintiff claims that he meets the Listings at 1.01, 3.00, and 6.01. The Commissioner argues that Plaintiff fails to specify which of the Listings he allegedly met (only citing to generalized categories) and he fails to show that he met or equaled one of the Listings.

"For a claimant to show that his impairment matches a listing, it must meet all of the specified medical criteria." Sullivan v. Zebley, 493 U.S. 521, 530 (1990). It is not enough that the impairments have the diagnosis of a listed impairment; the claimant must also have the findings shown in the listing of that impairment. 20 C.F.R. § 404.1525(d); see Bowen v. Yuckert, 482 U.S. 137 (1987)(noting the claimant has the burden of showing that his impairment is presumptively disabling at step three of the sequential evaluation and that the Act requires him to

furnish medical evidence regarding his condition). The Commissioner compares the symptoms, signs, and laboratory findings of the impairment, as shown in the medical evidence, with the medical criteria for the listed impairment. Medical equivalence can be found if the medical findings are at least equal in severity and duration to the listed findings. 20 C.F.R. § 404.1526(a). "Medical equivalence must be based on medical findings," and "must be supported by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1526(b). Finally, a claimant has to establish that there was a "twelve-month period…during which all of the criteria in the Listing of Impairments [were] met." See DeLorme v. Sullivan, 924 F.2d 841, 847 (9th Cir. 1991)(finding that the claimant's back impairment did not meet the requirements of section 1.05C; remanded on other grounds).

Plaintiff first argues that he meets the Listings at § 1.01 concerning musculoskeletal disorders. He does not state what specific listing he met, but may be attempting to claim that he met or equaled the Listing at § 1.02. The Listing at § 1.02 requires major dysfunction of a joint:

> Characterized by gross anatomical deformity (e.g., subluxation, contracture, bony or fibrous ankylosis, instability) and chronic joint pain and stiffness with signs of limitation of motion or other abnormal motion of the affected joint(s), and findings on appropriate medically acceptable imaging of joint space narrowing, bony destruction, or ankylosis of the affected joint(s). With:
> A. Involvement of one major peripheral weight-bearing joint (i.e., hip, knee, or ankle), resulting in inability to ambulate effectively, as defined in 1.00B2b;
> or
> B. Involvement of one major peripheral joint in each upper extremity (i.e., shoulder, elbow, or wrist-hand), resulting in inability to perform fine and gross movements effectively, as defined in 1.00B2c.

20 C.F.R. Pt. 404, Subpt. P., App. 1, § 1.02.

Plaintiff fails to show that he met or equaled the Listings at § 1.02. Significantly, he fails to show that he was unable to ambulate effectively[7] or unable to perform fine and gross movements effectively. The medical records reveal that Plaintiff had intact extremity motor functioning without deformity (Tr. 160, 171-172), including normal upper extremity ranges of motion and strength (Tr. 209, 213, 216), normal grip strength (Tr. 150), normal left knee/lower extremity ranges of motion and strength (Tr. 150, 205, 210, 216), and the ability to perform fine and gross manipulations with the hands, heel/toe walk, ambulate easily without assistance, and squat (Tr. 150, 162-163). Left knee x-rays in October 2002, revealed normal soft tissues and the absence of arthritic changes, fracture, or other abnormalities. Tr. 204.

Plaintiff alleges that he met the Listings at § 3.00, which concerns the respiratory system. Plaintiff does not specify which listed impairment under § 3.00 he met. He, however, fails to show that he met or equaled an Listing under § 3.00. Medical examinations consistently reveal that Plaintiff had clear lungs with good air movement and nonlabored breathing, without rales, rhonchi, wheezes, spontaneous cough, intercostal retractions, or use of accessory muscles. At times he had occasional wheezes or mild widespread rhonchi, but they cleared with coughing. Tr. 149-150, 160, 172, 188, 191, 196, 199, 201, 205, 209, 320. An x-ray of Plaintiff's chest in December 2001

---

[7]Plaintiff reported at the hearing that he used a cane to ambulate. Tr. 379-380, 383. There is no indication in the medical record that any physician advised Plaintiff to use a cane permanently. Further, the use of one cane to ambulate does not meet the statutory definition of an inability to ambulate effectively. 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 1.00B2b(2)("The inability to ambulate effectively "means an extreme limitation of the ability to walk; i.e., an impairment(s) that interferes very seriously with the individual's ability to independently initiate, sustain, or complete activities. Ineffective ambulation is defined generally as having insufficient lower extremity functioning (see 1.00J) to permit independent ambulation without the use of a hand-held assistive device(s) that limits the functioning of both upper extremities.").

11

showed improvement consistent with regression of sarcoidosis. Tr. 124. Variable spirometry revealed a moderate obstructive ventilatory deficit and a possible restrictive component, with the absence of pulmonary fibrotic process or destructive disease. Tr. 153, 155. On a number of occasions, Plaintiff reported breathing well (Tr. 191, 196, 201) and denied shortness of breath. Tr. 188, 191, 196, 201, 205. It was often noted that Plaintiff's asthma was stable and controlled with treatment. Tr. 191, 196, 201, 210. "If a symptom can be reasonably controlled by medication or treatment, it is not disabling." Gross v. Heckler, 785 F.2d 1163, 1165-6 (4th Cir. 1986).

Plaintiff also alleges that he met the Listings at § 6.01 (Genitourinary Impairments), but does not specify which Listing under § 6.01 he met. He fails, however, to show that he met or equaled any of these listings. Although Plaintiff underwent lithotripsy for kidney stones and was hospitalized for acute renal failure prior to the date his disability allegedly began, there is no indication that he required treatment for kidney stones or other genitourinary disorders from the time his disability allegedly began to the time of the ALJ's decision. Further, he fails to show that he meets any of the requirements for impairment of renal function under § 6.02 (requiring chronic hemodialysis or peritoneal dialysis, kidney transplant, or persistent elevation of creatinine or reduction of creatinine clearance with other findings).

## CONCLUSION

Despite Plaintiff's claims, he fails to show that the Commissioner's decision was not based on substantial evidence. This Court may not reverse a decision simply because a plaintiff has produced some evidence which might contradict the Commissioner's decision or because, if the decision was considered de novo, a different result might be reached.

This Court is charged with reviewing the case only to determine whether the findings of the Commissioner were based on substantial evidence, <u>Richardson v. Perales</u>, <u>supra</u>. Even where a plaintiff can produce conflicting evidence which might have resulted in a contrary decision, the Commissioner's findings must be affirmed if substantial evidence supported the decision, <u>Blalock v. Richardson</u>, <u>supra</u>. The Commissioner is charged with resolving conflicts in the evidence, and this Court cannot reverse that decision merely because the evidence would permit a different conclusion. <u>Shively v. Heckler</u>, <u>supra</u>. It is, therefore,

RECOMMENDED that the Commissioner's decision be affirmed.

Respectfully submitted,

Joseph R. McCrorey
United States Magistrate Judge

February 3, 2006
Columbia, South Carolina